# CASES AT LAW

DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

AT MARCH TERM, 1861.

---

THE STATE, ISAAC I. VANDERBECK and others, prosecutors, *vs.* THE MAYOR AND COMMON COUNCIL OF JERSEY CITY AND THE WATER COMMISSIONERS OF JERSEY CITY.

1. The common council of Jersey City are authorized by statute to adopt a plan of sewerage reported by the water commissioners. The plan reported by the commissioners, and adopted by council, provided for excavating a canal along the western boundary of the city, and connected with this canal, "to have a system of main sewers laid upon the inclination due to the difference between high and low water, and emptying into the Hudson river. These are to be flushed, at regular intervals, by the water in the canal, admitted during high tide by self-acting tide gates." The report also provided for lateral sewers, and embraced a variety of details, including the form and dimensions of the sewers and pipe drains, the materials of their construction, and estimates of the cost of the work. The commissioners are expressly authorized and empowered by statute to construct the canal locks, sewers, and drains described in the plan, at such times as common council may decide, and to make such changes as may be found convenient and necessary in the progress of the work. *Held,* that sewers may be built before the canal is constructed, and if the commissioners alter the grade, form, and dimensions of the sewers, and build of dif-

State v. Jersey City.

ferent materials from what is provided in the plan reported by them, and adopted by council, it will not invalidate an assessment made for building the sewers.

2. If the sewers built by the commissioners are faulty, and do not answer the purpose for which they were intended, it will not relieve the parties assessed from their obligation to pay the assessment.

3. The misconstruction or malconstruction of a public work, arising from the incapacity, mistake, or fraud of a contractor, will not invalidate the assessment, or relieve the parties assessed from the obligation to pay it.

4. When a main sewer is authorized to be built, the commissioners have power to construct the drains for the adjacent streets at the same time, without special proceedings for that purpose; and even if a lateral sewer is improperly constructed with the main sewer in question, it will not invalidate an assessment made for the main sewer and its authorized branches, unless it should be conclusively shown that the amount of the assessment upon each land-holder is thereby increased and his interests prejudiced.

5. An allowance by the commissioners to the contractors for extra work and materials, not provided for in their contract, is in the discretion of the commissioners, and does not invalidate the assessment.

6. The water commissioners have power to correct all errors and omissions in their assessment, and may, if necessary for that purpose, make a new assessment roll: their power is not exhausted by preparing. and even formally approving an erroneous, defective, or invalid assessment.

7. It is no objection to an assessment for building a sewer, that the ground through which it is laid is not a regularly laid-out street. Whether it is laid in a lawful street or highway, will not be inquired into by the court on *certiorari* to set aside the assessment; and if the commissioners lay it through private property, and the sewer is built, and an assessment is made for building it before an appraisement of the property is made, it will not invalidate the assessment.

8. If the new sewer connects with an old sewer, for which the property had been previously assessed, it does not prevent an assessment on the same property for the new one: all the property drained by the new sewer should be assessed to pay for its construction; and if the property previously assessed is omitted, the new assessment will be open to exception.

In error to the Supreme Court.

Several *certioraris* were issued out of the Supreme Court, to the mayor and common council of Jersey City and to the water commissioners of said city, to set aside an assessment for building a sewer, known as the Wayne street, Railroad avenue, and Newark avenue sewer, and the lateral sewers connected therewith.

State v. Jersey City.

By a rule of the Supreme Court, the several *certioraris* were consolidated. That court affirmed the assessment, and the proceedings were removed to this court by writ of error.

The following errors, assigned for reversing the judgment of the Supreme Court, are substantially the same as the reasons filed in that court in *certiorari*, and show the material points relied upon for setting aside the assessment.

1st. Because said main sewer and the laterals thereto connected were not built in conformity to the plan or general system of sewerage proposed by the water commissioners, and adopted by the mayor and common council of Jersey City.

2d. Because said sewer is above medium low tides at the Hudson river, instead of being one foot below medium low tides as fixed by the general plan of sewerage; and because said sewer, as now constructed, would not strike the proposed canal at one foot six inches below medium full tide, as fixed by said plan; but if completed according to its present grade and descent it would not strike the canal at all, but would come out above high water line at the canal; and because said main sewer and the laterals thereto connected are not built with the descents as fixed in the general plan of sewerage.

3d. Because said sewer, as constructed, is an entire departure from the general plan or system of sewerage, and ruinous to the whole system, and makes the proposed canal, for which the lot-owners of the line of this sewer may be assessed, of no value to them, as the sewer, as constructed, cannot be flushed with the water from said canal.

4th. Because the said main sewer and laterals are not placed as deep as required by said plan by from two to four feet, thus depriving the prosecutors of a cellar drainage to their property, and only giving them a surface drainage.

5th. Because the said sewer and laterals are built partly of wood and partly of brick, thus making them subject to speedy and rapid decay; whereas, by the plan adopted, they should have been built of brick or burnt clay, in order to make them stable—a part of the plan proposed and adopted.

6th. Because $2033.65 was allowed to the contractors for extra depths of laterals, which, by their contract, they were obliged to put down at the contract price, and which allowance was contrary to law, and for extras paid for sheeting left in and other work, contrary to the terms of the contract.

7th. Because the water commissioners made an assessment for said improvement, which they afterwards canceled, and re-assessed the same property for the same improvement, which re-assessment they could not lawfully make, and which re-assessment is particularly void as against the prosecutor, George E. Grenzebach, whose assessment was raised several hundred dollars.

8th. Because said sewer was not only run through the streets, avenues, lanes, or alleys of said city, but also through the private property of the said George E. Grenzebach, whose lands cannot be assessed for the same; because said private property was not taken for said sewer by an appraisement of its value, and payment for the same by the said water commissioners, or by any other due process of law.

9th. Because the said sewer was run through streets and avenues and private property contrary to the general plan of sewerage, making material alterations therein, and adding a large number of laterals thereto not embraced in the plan.

10th. Because the old sewer in Wayne street, from Washington street to the river, of six hundred feet, which was to be taken up and put down deeper by the water commissioners' plan, was not done, but the new sewer was connected therewith.

11th. Because the laterals to said sewer were built in a street not contained in the application and notice for objections to said sewer ; thus laterals have been built in front of and across the property of the prosecutors, who had no notice of the same, and who are now assessed for said sewer.

12th. Because the lots of Thomas W. James, one of the prosecutors, have heretofore been assessed for the Wayne street sewer, already built, and are now re-assessed for the extension of said sewer, and the laterals connected thereto.

*Weart* and *Bradley*, for plaintiffs in error.

*McClelland* and *Zabriskie*, for defendants.

The CHANCELLOR. *Certioraris* were issued out of the Supreme Court, to the mayor and common council and to the water commissioners of Jersey City, to remove their proceedings in relation to the construction of and assessment for a sewer in said city, known as the Wayne street, Railroad avenue, and Newark avenue sewer, and the lateral sewers connected therewith, in order that the assessments for said sewer might be reviewed and set aside.

By the judgment of the Supreme Court the proceedings of the common council and of the water commissioners, in relation to the construction of the sewer, and to the assessment therefor, were affirmed. That judgment is now brought before this court for review.

The principal reason relied on for reversal is, that the main sewer and the laterals therewith connected were not built in conformity to the plan or general system of sewerage proposed by the water commissioners, and adopted by the mayor and common council of the city.

Among the numerous alleged departures from the general plan of sewerage are—

1. That the main canal has not been built.

2. That the sewer is constructed at too great an elevation, and with a defective grade.

3. That they are built partially of wood, and not entirely of brick; that they are oval in form, and not circular.

The character of these and other similar objections renders it necessary to ascertain with some degree of precision what constitute material departures from the plan of sewerage authorized by law.

The plan proposed by the water commissioners, and adopted by council contemplates the construction of a canal at the level of high tide, for the purpose of cleansing the sewers, by flushing a series of main sewers connected with the canal, and emptying into Hudson river, laid upon the inclination due to the difference between high and low water, and connected with these main sewers, a series of lateral sewers, which should drain the intermediate streets and alleys. The report embraces a great variety of details, including the form and dimensions of the sewers and pipe drains, the materials for their construction, and estimates of the cost of the work. It was insisted by counsel, in argument, that the general plan of sewerage extended to and included all these details of arrangement, materials, and construction, and that a material departure in any respect must be fatal to the validity of the assessment; that the legislature have authorized the construction of such work only as was reported by the commissioners, adopted by council, and sanctioned by the statute.

What was designed by the general plan of sewerage, and what are its essential features, will be best understood from the language of the report itself.

Four plans are presented as applicable to the drainage of the city.

1st. By raising the level of all the low land to that height which will allow a descent to the drains sufficient

to keep them clear by the natural flow of the sewerage water.

2d. By draining all that part of the city north of Newark avenue from the summit, east into the Hudson river, and west into Mill creek, or a receiving reservoir, and that part south of Newark avenue into tide water, passing under the Morris canal.

3d. By leading all the main sewers into a collecting sewer, and pumping out the sewerage water by steam-power.

4th. (Which is the plan adopted by council.)

By excavating a canal, beginning on the Hudson river, at the boundary between Hoboken and Jersey City, on the north, and after following the western boundary of the city, communicating again with tide-water, either at the Morris canal or at Communipaw bay.    Connected with this canal, it is proposed to have a system of main sewers laid upon the inclination due to the difference between high and low water, and emptying into the Hudson river.    These are to be flushed at regular intervals by the water in the canal, admitted during high tide by self-acting tide gates.

In furnishing the details of the plan, it is proposed to open a canal one hundred feet wide, furnished with tide gates, by which the water should be locked in at high tide, thus furnishing a navigable basin for boats, as well as ample water-power for flushing out the sewers.

1. The first objection to the validity of the assessment is, that the entire work is illegal and in violation of the statute, the canal not having been constructed, and being, as is alleged, now virtually abandoned and regarded as impracticable.

There is no evidence that the construction of the canal is abandoned.    On the contrary, so far as the official action of the council or board of water commissioners is concerned, all their proceedings recognize and adopt the plan sanctioned by council.    There is nothing in the act re-

.quiring the canal to be built· before the sewers are constructed, or designating the time when it shall be built; on the contrary, the water commissioners are expressly authorized and empowered by statute to construct the canal, locks, sewers and drains described in the plan, with such changes or alterations as may be found convenient or necessary in the progress of the work, and at such times as the mayor and common council shall decide that the several parts are required for the benefit or convenience of the citizens or the promotion of the public health. The time for the construction of the canal is referred to the decision of the common council. It does not appear that they have decided that question, or that they have been called upon to do it; nor is it perceived what possible prejudice the absence of the canal can be to the rights or interests of the plantiffs in *certiorari*. The sewer for which they are assessed, as applied for and ordered to be constructed, terminates not at the canal, but at the intersection of Newark avenue and South Seventh street, some thousands of feet distant from the canal. No sewer, so far as appears by the evidence, has been authorized to be built between that point and the proposed location of the canal. The absence of the canal, therefore, can neither invalidate the assessment nor prejudice their interests by impairing the value of the sewer.

2. The second objection to the validity of the assessment is, that the level of the sewer, as constructed, is too high; that it is not one foot below medium low tide at the Hudson, nor one foot six inches below high tide at the canal, as proposed by the plan; and because the grade of the sewer is defective, and not built with the descent designated in the general plan of sewerage.

Admitting these changes to be essential departures from the general plan of sewerage, and the fact of their existence to be clearly proved, the answer to the objection is, that it does not appear that they were authorized either by the common council or by the board of water

commissioners. So far as appears by the official proceedings of the water commissioners, or by their contract for the construction of the sewer, the sewer was to be constructed in accordance with the plan of sewerage adopted by council. There is no evidence before us of any authorized departure from that plan, except so far as it may be inferred from the fact that the work was paid for. It is needless to observe, that no misconstruction or malconstruction of the work, arising from the incapacity, the honest mistake, or the fraud of the contractor, would invalidate the assessment, or relieve the parties assessed from the obligation to pay it. In this respect the property owners, assessed under the provisions of this law for the cost of a sewer, must stand upon the same footing with parties assessed for taxes for the public benefit. They take the hazard incident to all public improvements, of their being faulty or useless through the incapacity or fraud of public servants. The pretext that a tax-payer shall avoid the payment of his assessment because the funds are injudiciously applied, is the worst form of repudiation.

But admitting that the change in the relative height of the sewer to tide water in the canal and Hudson river, and the change in the grade of the sewer, was made by the express authority of the water commissioners, it is no fatal objection to the assessment.

By the plan, it was proposed to have connected with the canal a system of main sewers, laid upon the inclination due to the difference between high and low water, and emptying into the Hudson. In the details of the plan, it was further proposed to have the bottom of the sewer laid one foot and a half below medium high tide at the canal, with a descent varying from sixty-six hundredths of an inch to one inch and seven-tenths of an inch per one hundred feet, to strike the Hudson at one foot below medium low tide. It may be suggested that the precise depth and grade of the sewer, like its form and the ma-

terials of its construction, never were designed to be essentials of the plan, but were designed to be modified as experience in the progress of the work might suggest. But admitting that they are essential elements of the plan, and that they were changed by the authority of the water commissioners, it cannot affect the validity of the assessment.

By the statute authorizing the construction of the work, the water commissioners are authorized to construct the canal, locks, sewers, and drains described in the plan, with such changes or alterations as may be found convenient or necessary in the progress of the work. *Pamph. Laws*, 1854, *p.* 403, § 1.

The work is to be constructed under the superintendence of the water commissioners and their engineer or inspector. *Pamph. Laws* 1852, *p.* 428, § 22.

The necessity or expediency of changes or alterations in the sewers are referred solely to the discretion of the water commissioners. If, in the progress of the work, they found these changes expedient or necessary, they were authorized to make them. A vast deal of evidence has been taken to prove that the change in the depth and grade of the bottom of the sewer is injurious to the value of the work. But who constituted this court a judge of that question? The statute refers it exclusively to the water commissioners, and their decision, however erroneous it may prove to be, must be final.

The same answer, and with more self-evident applicability, may be made to all those objections which relate to the form and dimensions of the sewers, and to the materials of which they are constructed. The proposals contained in the plan, in regard to all these details, were manifestly tentative in their character, and were referred, and most wisely referred, to the judgment of the commissioners, to be changed or altered as experience should suggest, or as difficulties encountered in the progress of the work should render necessary. It is an undoubted

hardship that the owners of property should be compelled to pay for an improvement made for their benefit, which ignorance or mistake has rendered comparatively valueless. But the hardship would not be rendered less by throwing the burthen of the cost of an improvement executed for their benefit upon their fellow citizens who had no immediate interest in its execution, and who are compelled to bear the burthen of sewers built for their benefit, and which may prove equally valueless.

3. The third objection is, that certain lateral sewers were constructed in connection with the main sewer which were not specified in the application, and which were not included in the original plan.

The language of the third section of the act of 1854 (*Pamph. Laws* 403) warrants the interpretation that, when the main sewer is ordered to be built, the drains for the adjacent streets shall, as a matter of course, be constructed at the same time, without special proceedings for the authorization of such lateral sewers. If so, the repealing clause is broad enough to repeal all previous enactments in conflict with such construction. But, aside from this construction of the act, the fact that a lateral sewer was improperly connected with the main sewer in question would not render the construction of the main sewer and its authorized laterals illegal. Nor should it affect the validity of the assessment for the main sewer and its authorized branches, unless it should be conclusively shown that the amount of the assessment upon each landholder was thereby increased, and his interest, prejudiced. I find no such evidence in the record.

4. The allowance to the contractors for extra work not included in the contract, and for the cost of material not provided for in the contract, but deemed necessary for the security of the work, was clearly within the discretionary powers of the water commissioners, and in no way affects the validity of the assessment.

5. The water commissioners, by virtue of their general

authority, have power to correct all errors and omissions in their assessment, and for this purpose to make, if necessary, a new assessment roll.  Their power over the subject was not exhausted by the preparation of an erroneous, or defective, or invalid assessment roll, even if the assessment had been formally approved.  By the return, it appears that the first assessment was never completed, the signature of the president not having been attached.

6. It is objected that the sewer was run through private property, not within any street, avenue, lane, or alley, and that no appraisement of the value of such property was had, or compensation made to the owner therefor.

The land in question is a narrow strip, lying between the termination of Coles street, on the one side, and of Varick street on the other, the passage across the lot forming a connection between those two public streets, and thus constituting one continuous line of street or road.  The road across the lot has been open and used as a highway for over twenty years, and is, in fact, a part of a public street, used as such by the public : whether it be a lawful street or highway, is a question which cannot be tried and decided in this collateral proceeding.  Being used and occupied by the public for more than twenty years as a street, it will, for the purposes of this cause, be regarded as a street within which the sewer may be rightfully located.  But if the fact be otherwise, the act of 1854 (*Pamph. Laws* 403, § 2,) authorizes private property for the purposes of the sewer to be taken by appraisement.  If the appraisement of, and compensation for the property has not already been made, it may be done hereafter.  In any event, the validity of the assessment is not impaired.

It is no objection to the validity of the assessment that the old sewer in Wayne street was retained, and the new sewer connected therewith.  There is nothing in the statute or in the city ordinance prohibiting it.  If it necessarily involved an alteration of the sewer, as pro-

posed to be laid down in the general plan, such alteration was within the powers conferred on the commissioners by the act of 1854. Nor is there any illegality in assessing property drained by the new sewer, although it had been previously assessed for the old sewer. The act requires all the property drained by the sewer, as constructed, to be assessed. Had the property previously assessed been omitted in the assessment roll, the assessment would have been open to exception.

There is no fatal error in the assessment, or in the proceedings for opening the sewer upon which the assessment is founded. The judgment of the Supreme Court must be affirmed.

*For affirmance*—The CHANCELLOR, the CHIEF JUSTICE, and Judges BROWN, CLAWSON, OGDEN, VREDENBURGH, COMBS, CORNELISON, KENNEDY and SWAIN.

*For reversal*—Judge WOOD.

CITED *in State* v. *Jersey City*, 1 *Vr.* 150; *Jersey City* v. *State*, 1 *Vr.* 525; *Eames* v. *Stiles*, 2 *Vr.* 493; *State* v. *City of Hudson*, 3 *Vr.* 368; *State* v. *Jersey City*, 5 *Vr.* 44; *State* v. *Atlantic City*, 5 *Vr.* 103; *State* v. *Jersey City*, 5 *Vr.* 279; *Bond* v. *Newark*, 4 *C. E. Gr.* 385; *Schumm* v. *Seymour*, 9 *C. E. Gr.* 155; *Leibstein* v. *Newark*, 9 *C. E. Gr.* 204.